## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **LEBANON EQUIPMENT** | ) | **CHAPTER 11** |
| **COMPANY, INC.** | ) | |
| Debtor. | ) | **CASE NO. 10-72524** |

___

| | | |
|---|---|---|
| | ) | |
| **AGRICREDIT ACCEPTANCE, LLC** | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | **MOTION FOR RELIEF** |
| | ) | **FROM AUTOMATIC STAY** |
| **LEBANON EQUIPMENT** | ) | |
| **COMPANY, INC.** | ) | |
| | ) | |
| Respondent. | ) | |

___

## MEMORANDUM DECISION

Agricredit Acceptance, LLC (the "Movant" or "Agricredit") filed the present Motion seeking relief from the automatic stay to allow it to repossess its collateral on November 8, 2010, and amended it on November 18, 2010. The Motion sets forth four bases for the Movant's request for relief from the stay. First, the Movant asks for relief under 11 U.S.C. § 362(d)(1) for lack of adequate protection because the Debtor has not made any payments to it since the commencement of the case, no proposal for adequate protection has been made, and the stay is resulting in a decrease in the Movant's interest in the property. The second count asks for relief under § 362(d)(1) because of the Debtor's pre-petition default in the security agreement. The Movant argues that the default could not be cured in a Chapter 11 plan because it resulted from the Debtor's misrepresentation. Count three, also under § 362(d)(1), requests relief because the Debtor filed the petition in bad faith. Specifically, the Movant argues that the

Debtor filed its petition just four days after the Movant filed an action for prejudgment attachment of the collateral in state court and, because the schedules were not filed until sixteen days after the petition date and none of the motions typically brought early in a Chapter 11 case had been filed, it appeared the petition was filed not in a good faith effort to reorganize but in order to prevent the state court action from going forward. The final claim is brought under § 362(d)(2), alleging that the Debtor has no equity in the collateral and it is not necessary for an effective reorganization.

The first hearing on the Motion was held on December 1, 2010. After the parties agreed to continue the hearing on the motion a number of times, the final hearing on the motion was conducted on May 18, 2011. At the conclusion of the hearing, the Court took the matter under advisement but gave the parties one week to negotiate a resolution of the motion. Counsel for the Movant docketed a letter on May 25 indicating that both he and counsel for the Debtor would like a one week extension of the negotiation period, and this Court granted the extension by its letter docketed the next day. On June 1, counsel for the Movant docketed another letter indicating that he and the Debtor's counsel could not reach an agreement and asking the Court to issue a ruling on the Motion. For the reasons that follow, the Court will conditionally continue the stay in effect through July 10, 2011 but will modify the stay to permit the Movant to take possession and dispose of its collateral effective July 11, 2011.

**SUMMARY OF EVIDENCE**

Prior to the hearing, the parties filed a Joint Stipulation of Facts. According to the Stipulation, the Movant is a secured creditor of the Debtor with a security interest in a specified list of McCormick tractors and agricultural equipment in the Debtor's inventory. The Stipulation

states that the equipment is generally in new condition and has a value, determined by the Debtor, of $172,638.09. The parties stipulate that the inventory was inspected by the Movant on January 3, 2011, and the balance owed by the Debtor on the equipment in its inventory as of that date was $188,452.15. As of April 26, 2011, the balance owed on the equipment in the Debtor's inventory was $181,403.08. The Stipulation states that the difference between the total principal balance owed and the balance owed on the equipment currently in the Debtor's inventory is the result of equipment that has already been sold and is no longer in the Debtor's possession. The total amount claimed by the Movant, including interest, is $275,514.02.

At the hearing, the Movant's witness was Mr. Steven Nagy, Jr., a portfolio manager for the Movant. Mr. Nagy testified that he had worked for the Movant in that capacity for three years and that the Debtor's account had been part of his portfolio during that time. Mr. Nagy testified that the Movant has a security interest in all McCormick products in the Debtor's inventory. Under the security agreement, the Movant allows the collateral to be placed on the Debtor's lot and the Debtor has one year to sell the collateral before it has to begin making curtailment and interest payments to the Movant. Upon the sale of the collateral, the Debtor pays the principal balance, which essentially represents the wholesale cost of the particular piece of collateral sold, and keeps any amount paid by the purchaser above the principal balance as its profit. He stated that the Movant does not decrease the principal balance as the collateral ages. He testified that, unlike automobiles, the fact that a tractor is a year old or more does not materially affect the value. While the age of the tractor may eventually affect the value, this is only reflected in lower profits to the dealer as the principal balance owed to the Movant is never decreased. In order to keep track of the collateral on the Debtor's lot, Mr. Nagy testified that

either he or a third party hired by the Movant would perform audits during which the collateral would be inspected

During one such audit in the fall of 2010, Mr. Nagy became aware that some of the collateral that should have been on the lot was missing. He met with Ms. Vencill, the owner of the Debtor, to see if the missing units were sold between the time he downloaded the inventory list from the Movant's records and the performance of the audit. He testified that her records indicated that there were several units that had been sold and for which payment had not yet been received. He notified the Movant that the payment would be forthcoming because the Debtor usually paid within a week or ten days of the sale of the collateral. However, the payment never materialized. Mr. Nagy then asked Ms. Vencill about it, and she responded that she expected to pay the principal balance soon. This situation persisted for several months until the Movant, pursuant to company policy, considered the collateral to have been sold "out-of-trust" in violation of the security agreement. The Movant tried to work out arrangements with the Debtor, such as granting extensions for the Debtor to make interest and curtailment payments, to allow the Debtor to pay it the balance owed on the collateral sold, but when the payments were still not made, the Movant took legal action in state court to recover the collateral. Shortly after that, the Debtor filed for bankruptcy protection. Mr. Nagy testified that the current balance owed to the Movant on the equipment on the Debtor's lot is $181,403.08, the amount owed on the assets sold out-of-trust is about $77,000, and the amount owed for interest, which accrues on the collateral currently on the Debtor's lot, is $17,743.

On cross-examination, Mr. Nagy testified that, if the Movant were granted relief from the stay, it would take possession of the collateral and place it on another dealer's lot. He

stated that the Movant would increase the principal balance owed by the new dealer by $181,403.08 to reflect the additional collateral now on the new dealer's lot and a credit of the same amount would be issued to the Debtor. Thus, the only thing the Debtor would lose would be the opportunity to sell the collateral at a higher price and make a profit. The amounts owed for the collateral previously sold and for interest would remain the obligation of the Debtor.

Ms. Vencill testified on behalf of the Debtor. She testified that she started the business forty years ago with her husband and has managed the business since her husband's death in 2008. She stated that, since filing for bankruptcy protection, the Debtor has sold one tractor in which the Movant holds a security interest and sold it for $6,000 above the balance owed to the Movant on that piece of collateral. She also stated that she is trying to sell another tractor, which would result in a profit of about $4,000 if it is sold. On cross-examination, Ms. Vencill admitted that she used the $6,000 to maintain operations and did not use it to pay down the interest or the unpaid amounts for collateral sold out-of-trust. However, she testified that she believes she can now support ongoing operations from selling parts and from the servicing part of the business and that she would be willing to use the profits from any collateral sold in the future to pay down the Movant's claim.

With regard to the other collateral on the lot, Ms. Vencill testified that it is in good condition. Because of that and the improving market for agricultural equipment in the area, she testified that she believes that much of the collateral could be sold. Further, she testified that she believes that the equipment could be sold at a high enough price to pay down a portion of the approximately $77,000 owed for collateral sold out-of-trust. As far as maintenance of the collateral, each unit is cleaned, started each month to ensure it is in proper working order, and

stored on a fenced-in lot secured by locks that cannot be cut.  Ms. Vencill testified that she has

insurance on the collateral in effect until July 13 on which the Movant is a loss payee.  She

believes she will be able to continue coverage beyond July 13 because the premiums should now

be lower based on the Debtor's changing circumstances and because she is looking for a

provider that will charge less.  In addition, she stated that the Debtor does not incur personal

property tax liability from having the collateral on its lot.

　　　　　Ms. Vencill also testified that she is currently trying to sell the Debtor's business

as an ongoing concern and that maintaining the collateral on the Debtor's lot would be helpful

for that purpose because, without the collateral on the lot, potential purchasers may not see the

business as an ongoing operation.  She stated that she currently has four interested buyers to

whom the Debtor has given financial statements and other information.  She also stated that she

contacted the manufacturers of the product lines for which the Debtor serves as a dealer asking if

they would be interested in continuing their relationship if the business were sold to a new

owner.  Each said that they would be interested and each would run a credit check on the new

owner once the transition took place.  However, with regard to the collateral currently on the lot,

Ms. Vencill stated that she anticipates a transaction in which the purchaser arranges its own

financing and pays off the Debtor's creditors upon closing.  She testified that she expects a deal

to be in place, and for the Movant and other creditors to be paid, sometime this summer.[1]

---

[1] The Debtor filed an Amended Plan on June 1, 2011.  In the plan, the Debtor proposes to pay Agricredit's secured claim "through the sale of collateral in the marketing process for the dealership assets."  The plan provides for a marketing period of fifteen months.  Ms. Vencill will attempt to sell the real estate on which the dealership sits through Blue Ridge Realty and will offer the dealership assets to any prospective buyers on behalf of the Debtor.  She will also solicit offers for the Debtor's dealership assets apart from the sale of the real estate.  The plan states that the asking price for the dealership, apart from the real estate, is $1,400,000.  At the

6

When asked about why the Debtor failed to pay the balance owed on the collateral sold out-of-trust, Ms. Vencill explained that, in 2009, the Debtor had an agreement with the manufacturer, McCormick, under which McCormick would pay the curtailment and interest payments to the Movant on the collateral that the Debtor ordered from the Movant. In December of 2009, McCormick informed Ms. Vencill that it could no longer pay the curtailment and interest payments and told her that the Debtor could terminate the agreement and they would come and collect the collateral or the Debtor could keep the collateral and make the curtailment and interest payments. She chose the latter course. The Debtor was able to make the payments until August of 2010, when the curtailment and interest payments took up all of the Debtor's cash flow. She then borrowed money to make the payments. However, because all of the Debtor's funds were being used for the curtailment and interest payments, nothing remained to pay the balances on the collateral that was sold.

## COMBINED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Motions to terminate, annul, or modify the automatic stay are "core" bankruptcy matters pursuant to 28 U.S.C. § 157(b)(2)(G).

The party seeking relief from the stay under either § 362(d)(1) or (2) has the initial burden of making out a *prima facie* case. *In re Eatman*, 182 B.R. 386, 390 (Bankr. S.D.N.Y. 1995) (citing *In re Elmira Litho, Inc.*, 174 B.R. 892, 900, 902 (Bankr. S.D.N.Y.

---

conclusion of the fifteen month marketing period, the plan provides that the Debtor will schedule an auction of any remaining dealership assets within three months of the end of the marketing period.

1994)); 3 *Collier on Bankruptcy* ¶ 362.10, at 362-135 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011); 2 Barry Russell, *Bankruptcy Evidence Manual* § 301:44, at 269-70 (2010-2011 ed. 2010).  Once the movant has established his *prima facie* case, the ultimate burden of proof on the debtor's lack of equity in the property remains on the movant, but the burden of proof on all other issues shifts to the party opposing the relief.  *See* 11 U.S.C. § 362(g).

In order to make out a prima facie case for relief from the stay for cause under § 362(d)(1), the movant must generally show that the continuation of the stay will cause some affirmative harm to it.  *Tidewater Fin. Co. v. Cooper (In re Cooper)*, 296 B.R. 410, 412 (Bankr. E.D. Va. 2002).  Where the asserted cause for relief is the lack of adequate protection, the movant must make a preliminary showing that it holds a valid secured claim and that there is an actual decline in the value of the collateral or a threatened decline from, among other things, the debtor's failure to keep property insurance on the collateral or to keep the collateral in good working condition.  *Elmira Litho, Inc.*, 174 B.R. at 902 & n.9.  Once this initial showing is made, the debtor then has the burden of proving the absence of cause.  *See id.*

In this case, Agricredit has failed to make an initial showing that it will be harmed by a short term continuation of the stay.  Although the Motion alleges that the collateral is losing value, the testimony of Mr. Nagy does not support this contention.  In addition, Ms. Vencill's testimony established that the property is insured against casualty loss until July 13, 2011 and is not subject to personal property taxes while it is in the Debtor's custody.  While Agricredit is understandably indignant about the items of its collateral allegedly sold out-of-trust pre-petition, it makes no complaints about the Debtor's treatment of the collateral since the commencement of the case.  In fact, it was paid in due course for the one item of equipment that has been sold post-

petition. While Agricredit would like to take possession of the remaining collateral and place it with other dealers, it offered no evidence that chances for the near-term sale of the equipment would be thereby improved. Therefore, the Court finds that Agricredit has failed to make out a *prima facie* case for relief from the automatic stay for lack of adequate protection and will therefore deny the first count of the motion.

Next, Agricredit argues that it is entitled to relief from the stay under § 362(d)(1) because of the Debtor's pre-petition breach of the security agreement. Specifically, it alleges that the Debtor breached the security agreement by selling certain pieces of its collateral out-of-trust. Whether cause exists for lifting the stay must be determined on a case-by-case basis. *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994) (citing *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992)). In making the determination of whether cause exists, "[t]he court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Robbins*, 964 F.2d at 345. As stated above, in order to make out a prima facie case, the party seeking relief must demonstrate that it will be harmed in some way by continuation of the stay. *Cooper*, 296 B.R. at 412.

The evidence produced at the hearing clearly proved that the pre-petition breach occurred. Mr. Nagy testified that payment was never received for several pieces of collateral that were sold pre-petition, and the failure to remit the payment was a breach of the security agreement. Moreover, Ms. Vencill admitted that the Debtor had failed to make the payments and offered an explanation as to why the payments were not made. However, no evidence was put forth to show that there was cause to grant relief from the stay on that basis. In other words,

there was no evidence that showed that, because of the pre-petition breach and the effect of the automatic stay, Agricredit was being harmed or the Debtor was being unduly benefitted.  The Court therefore finds that Agricredit has failed to make a *prima facie* showing of cause for relief from the stay based on the Debtor's pre-petition breach of the security agreement and will therefore deny count two of the Motion.

Agricredit's final argument for relief under § 362(d)(1) is that cause exists to lift the automatic stay because the Debtor filed its bankruptcy petition in bad faith.  The Motion alleges that the petition was not filed in an effort to reorganize but instead to prevent Agricredit's state court action to recover its collateral from going forward.  In support, it points to the fact that the petition was filed four days after it filed its state court action, the schedules were not filed until sixteen days after the filing of the petition, and no motions typical of a Chapter 11 case, such as motions to employ professionals or use cash collateral, had yet been filed as of the date of the Motion.  Cause to grant relief from the stay will exist because of a debtor's bad faith in filing its petition where it is shown that the case is objectively futile and filed with subjective bad faith. *See Carolin Corp. v. Miller*, 886 F.2d 693, 700-01 (4th Cir. 1989) (announcing the test for bad faith in the context of a motion to dismiss under 11 U.S.C. § 1112(b)); *Fairville Co. v. Ramkaran (In re Ramkaran)*, 315 B.R. 361, 365 (D. Md. 2004) (stating that the *Carolin* test for bad faith applies equally to motions for relief from the stay).  The first prong is met if there is evidence that there is no going concern to preserve and no hope of rehabilitation.  *Carolin Corp.*, 886 F.2d at 701 (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1073 (5th Cir. 1986)).  Under the second prong, the court examines whether the debtor's aim is to abuse the Chapter 11 process and cause hardship on creditors by invoking the

protection of the stay without the intent or ability to reorganize. *Id.* (quoting *Meadowbrook Investors' Grp. v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.)*, 30 B.R. 503, 505 (B.A.P. 9th Cir. 1983)). Agricredit has the burden of introducing some evidence of bad faith in order to make out a *prima facie* case showing that it is entitled to the relief it seeks. *In re King*, 83 B.R. 843, 847 (Bankr. M.D. Ga. 1988).

This it has not done. No evidence was produced at the hearing to show that the Debtor's case is objectively futile as there was no indication that the Debtor is no longer a going concern. There was also no evidence that the Debtor filed the petition only to stop the state court action and did not have the intent to follow through with the case to attempt to reorganize. As such, the Court finds that Agricredit has failed to make out a *prima facie* case for relief from the stay for cause based on the Debtor's bad faith in filing the petition and will therefore deny count three of the Motion.

Agricredit also seeks relief under § 362(d)(2). To make out a *prima facie* case under that section, a movant must first show that the debtor lacks equity in the collateral. *Brown Bark I L.P. v. Ebersole (In re Ebersole)*, 440 B.R. 690, 699 (Bankr. W.D. Va. 2010); *CMF Loudon Ltd. P'ship v. Nattchase Assocs. Ltd. P'ship (In re Nattchase Ltd. P'ship)*, 178 B.R. 409, 416 (Bankr. E.D. Va. 1994); *see also Elmira Litho, Inc.*, 174 B.R. at 900 ("The secured creditor who seeks relief from the automatic stay under § 362(d)(2) must demonstrate (1) the amount of its claim, (2) that its claim is secured by a valid, perfected lien in property of the estate, and (3) that the debtor lacks equity in the property."). If this initial burden is met, the burden of proof then shifts to the party opposing relief to prove that the property is necessary for an effective reorganization. *Ebersole*, 440 B.R. at 700. To make this showing, the party opposing relief must

show that the property is "essential for a reorganization *that is in prospect*," which is to say that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *Id.* (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376 (1988)).

Agricredit has met its burden of proof on the issue of the Debtor's lack of equity in the property. The parties have stipulated that the value of the real estate collateral for Agricredit's loan is $172,638.09. They also agree that the amount owed to Agricredit for the equipment remaining in the Debtor's possession is $181,403.08 and the amount owed on the total secured debt, including the items sold out-of-trust, is $275,514.02. Because the equipment remaining secures payment of the entire obligation, it is clear that the Debtor has no equity in the remaining collateral. The burden of proof therefore shifts to the Debtor to establish that the property is necessary for an effective reorganization.

The evidence produced by the Debtor to show that continued retention of the property is necessary for its successful reorganization is unpersuasive. For example, Ms. Vencill's testimony did not reveal what portion of its total equipment inventory is represented by Agricredit's collateral or how it could be that such collateral is so critical to a successful reorganization when it has sold only one piece of that collateral during more than six months of operations as a Chapter 11 debtor. In short, the evidence was general in nature, unsupported by detailed facts which would give it real credibility. While the Court has little doubt that continued retention of the Agricredit-financed inventory would be beneficial to the Debtor's reorganization prospects, that falls considerably short of a finding that the latter has carried its burden of establishing that such retention is "necessary" for such a reorganization to be accomplished. As

such, the Court finds that the Debtor has failed to carry its burden of establishing that the property is necessary for its reorganization, and the fourth count of the Motion will be granted.

The only question that remains is the form of relief. When a party has established its entitlement for relief, "the court shall grant relief from the stay . . ., such as by terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. § 362(d). Weighing the balance of potential harm to the parties by the continuation of the stay, the Court concludes that it is appropriate to continue the stay in effect upon certain conditions noted below through July 10, 2011 and then modify the stay effective July 11, 2011 to allow Agricredit to repossess the collateral that remains in the Debtor's possession. The stay will be continued through July 10 on the following conditions: (1) the equipment shall remain insured against casualty loss at all times, (2) the Debtor shall submit to Agricredit weekly status reports of its remaining equipment certified as accurate and signed by its president and loan guarantor, (3) the Debtor shall make the equipment on its premises available to inspection by Agricredit's agents during reasonable and regular business hours, (4) for any item of equipment sold prior to July 11, 2011, the Debtor shall pay Agricredit the full inventory cost of the equipment plus all accrued but unpaid interest applicable to such item forthwith upon receipt of the sales proceeds and shall make no sale of such equipment upon any credit terms other than, in its business judgment, for any portion of the sale price exceeding its obligation to Agricredit for the sale thereof; and (5) within ten days of the date of this Decision, the Debtor shall pay to Agricredit an adequate protection payment[2] equal to

---

[2] While an adequate protection payment is ordinarily intended to compensate the secured creditor for loss of collateral value while the stay remains in effect, *Timbers of Inwood Forest Assocs.*, 484 U.S. at 370, it is utilized here to reflect the Court's weighing of the equities between the parties arising from the circumstances recounted in this decision and the opportunity provided to the Debtor to make such orderly arrangements in this matter as it may determine

Document    Page 14 of 14

the amount of the unpaid interest obligation upon that one item of Agricredit collateral which has been sold post-petition for an amount exceeding the inventory cost value of such item but the excess sale proceeds of which were retained by the Debtor and used in its post-petition business operations.  If the debtor fails to satisfy any of these conditions, the automatic stay shall immediately be terminated as to Agricredit.  If the Debtor fails to pay for the equipment remaining in its possession in full or make other mutually agreeable arrangements with Agricredit for the consensual continuation of the stay by July 10, 2011, the stay will be modified effective July 11, 2011 to allow Agricredit to repossess its remaining collateral.  An order to this effect shall be entered contemporaneously with the docketing of this decision.

        This 10th day of June, 2011.

                                                          William F. Stone, Jr.
                                      UNITED STATES BANKRUPTCY JUDGE

---

advantageous.